on behalf of the United States is amicus. The Medicaid drug rebate statutes is specifically designed to get state Medicaid programs the best deals on prescription drugs. And the statute does that by requiring manufacturers to agree to provide Medicaid programs with the rebate. And the rebate is calculated based in part on the manufacturer's best price. Now for years, CMS has interpreted that phrase, manufacturer's best price, as meaning the price, quote, actually realized. That's the phrase used by the manufacturer, inclusive of all discounts and all rebates, and including discounts and rebates to more than one entity. This requirement stems from the rebate agreements that manufacturers must agree to in order to have their drugs eligible for coverage under Medicaid. And it stems from the 2007 rule that CMS adopted. And that rule in particular, specifically rejected the interpretation being advanced in this case by defendant. And here, I'd like to read from the preamble where CMS addressed this interpretation that the defendant is raising here. It says, the commenter stated that the statute is quite clear defining best price as the lowest price to any wholesaler, et cetera. Commenters argued that if Congress had intended anything other than a customer by customer analysis, this is defendant's argument here, of separate prices, the statute would have combined each customer with the word and, instead of the disjunctive for. And then this was CMS's response. We do not agree with the commenters. And a bit later on, it said, best price. What about the language of the statute, counsel? That's the thing. I mean, how do you get away from the language of the single price, the singular price? And then there's the word available, which would indicate an actual price rather than a hypothetical price. And then it talks about any wholesaler, retailer or governmental entity. So when you combine the singular price with the textual word available, and then put in the word any wholesaler, doesn't that suggest an actual entity rather than a hypothetical entity, which is what the aggregated or average prices would seem to lead you there. In other words, I've got a real question over whether, over how you deal with a number of words in the operative section as a matter of law. Okay, your honor, let me address that head on and try to clarify for you. So CMS's interpretation is a reasonable one of the statute for several reasons. Now, I think you can break that down into looking at the text and then looking at the structure and context. Okay, you know, even if I can see all of that view, which I do not, you say that's a reasonable one. But I would think that the dependency was probably the best in your textuality. So let's suppose you're right, hypothetically, and that is the CMS interpretation is reasonable. But suppose also that the defendant's interpretation is reasonable. Are we going to allow these claims to go forward on some sort of Chevron basis? Is that the test for fraud? No, your honor, I think you're- This council, there's a lot of room for Chevron. I would be supportive of Chevron in those contexts where it is found. But to say that reasonable interpretations, two reasonable interpretations, or even one arguably reasonable interpretation in one, which the statutory language suggests is the best, and that's on the basis of fraud. So your honor, let me take that in pieces so the allegation here is that the defendant knew or that it was on notice that the 2007 regulation was imposing this requirement. And did that with the requisite knowledge under the False Claims Act. Let me just ask at least a question from the perspective of where you're going with this. I don't read the district court opinions haven't actually gotten to this question. It looks to me as the district court determined that the defendant here position was not objectively unreasonable and never really answered that question in terms of the falsity of these statements. I mean, so even where we're going now, whether it's Chevron deference or whether the interpretation, none of that, I don't see that in the district court's decision. Am I wrong on that or? No, that's correct, your honor. And that's the- So you are arguing something the district court never got to. Right, and that's why- Because he relied upon this time objectively unreasonable in terms of the defendant. And when we, Judge Wilkerson mentioned textualism and where is that word in the statute objective in modifying reason? Right, your honor, it is- It's in the safe code decision, and that's where it is. It's in the decision of the United States Supreme Court. And that is in the safe code decision we can affirm on any basis that's evident from the record. And the statutory text here is something that's evident. But you ask, where is this? The whole objective reasonableness standard derives from the Supreme Court safe code decision. And there have been a slew of circuit court decisions that have followed in the wake of safe code. Your honor, I do want to point out- Wait a minute, I want to make sure we stay on my question. I understand the safe code used that term as a footnote at the current end of the opinion that goes there with it. I'm with Judge Wilkerson, it's out there. But there are many decisions on the other side too. My question is, where is it in the statute? I don't care who said it, where is it in the statute? Your honor, you're correct. The statute does not import the rigid framework that the defendant here is trying to say is required by safe code. Safe code involves a different statute with different text, different case law, different history. And importing a rigid framework to limit the three different knowledge provisions in the False Claims Act is a fundamentally flawed enterprise. As to falsity as well, your honor, there is no qualification of objective falsity in statute. The Supreme Court made clear in SQR that the court should not impose additional limitations on the falsity provisions of the False Claims Act. Well, look, you can look into, you know, when the statute doesn't define the word, you can look into its ordinary dictionary definition. And you know that. And the ordinary dictionary, the common connotation of the word falsity is one where there's a false fact claim, not a difference of legal interpretation. Excuse me, counsel, it's a question of whether the claimant is claiming things with respect to materiality. I mean, with respect to material, or with respect to personnel, or you're claiming something factually that is known to be false. But what I'm saying is that I think you've got multiple problems here. And the first one pertains to the word false and its ordinary definition. And the second goes to see enter. And what the Supreme Court has said under the safe code case. And I don't think we are any more than the other circuits, three or four of them have applied the safe code decision to their rulers. And I don't think that we're at liberty to disregard that. You're on to the 11th, 13th. All I'm saying is, counsel, there's a problem with respect to the underlying question of what falsity means. And even if you can pass that, there is a question of what's the interior. Your Honor, there was a lot in that question. I do want to take it in pieces. As to falsity, this court has already held in Drakeford, in the Drakeford case, that when the question is a defendant's compliance with the law, that is an objective question. That is an either or proposition. But let me move it even further. Judge Wilkerson indicates you can go to the dictionary. Is that what we do when the, under this particular type of act here, we're false claimed? Or do we look at any type of common laws, a federal common law definition of false and fraudulent claims? And can you have a false claim if it is a subjective situation or reason for this? Or does it have to be objective? Can it not be subjective also? So, Your Honor, the common law of fraudulent misrepresentation, which the Supreme Court has looked to when interpreting the False Claims Act, under that common law, it was, it is possible to have a misrepresentation based on an ambiguous statement. And it is true, Your Honor, that looking to the common law is a good place to start when interpreting the False Claims Act. And you see that what Congress did was it separated out the requirements of, the fraudulent requirement of fraudulent misrepresentation into false and knowledge. So it- That's why you have, under the common law, that you have items beyond this where misrepresentations, omissions, and opinions and medical judgments can also be actionable under the Federal Claims Act. So, I mean, that's part of where we are now is in trying to cabin this definition. And when we come up with a term like objective unreasonableness, the fact that courts continue to repeat it in a context that I do not believe it was used in SACO in that matter, doesn't make it part of the statute because ultimately we're looking at the statute. There is no objective qualification in that statute. And then they go to the definition under the Federal Common Law, you don't find it either. So, I mean, the repetition of an issue mostly by law courts, and we can disagree in terms of the applicability of SACO, but it does not mandate this outcome in this case. At least in my view. Your Honor, that's correct. And it adds to the SACO issue. I'd point this court to the HALO decision where the Supreme Court addressed the SACO argument and said, look, it doesn't apply here because this statute, it was the patent. This statute is a different type that has a different history, different case law. That's the same situation.  And I pointed out three words in the statute. The word, the singular, the price, and they were talking about any wholesaler, retailer would suggest an actual entity. And they were talking about a price available. And you're talking about a hypothetical price and one that's not available. And you're talking as if the statute had been written in terms of average price as opposed to an actual available price. And I don't think the statute was written that way. And then when you combine that with the SACO decision, you've got a lot to overcome. Let me start with the statutory piece that you're referring to, Your Honor. When you read through the statute, you pointed out that the words are singular. A lot of the defendant's argument rests on that. But we know from the Dictionary Act, we know in general that Congress can include the plural and the singular. That based on the context, this can be read to mean any wholesaler, retailer, or collection of them. And the context is what's gonna guide you here. And there are several pieces here. One is that the word any can be very expensive, as we know from other cases like Smith very high. The other is, you can see from the history here and from the special rules provision where it says that, where Congress said that the best price needs to be inclusive of discounts, free goods that are contingent on purchase requirement, volume discounts, rebates. You get the clear picture that Congress is trying to capture the waterfront here. It knows that sales can be complex. It knows that there could be rebates to one entity like an insurer, but then there's a different volume discount to the wholesaler. And I also wanna point out the structure here. Remember that the way that you calculate the rebate is by looking at the difference between the average manufacturer price and the best price. And defendant agrees that the average price does require stacking. It would be very odd if the average price were routinely lower than the best price. Thank you, counsel. You asked for five minutes. We've given you six and a half. And if either of my co-panelists has a question of you, I'll be happy to let you speak further in response to it. So, here's the question. Does it matter? No question, Joe. All right, who do we have after that? We have Joe Calo also on behalf of the plaintiff later in this matter. All right, well, we'll be happy to hear from you. Thank you. And I'd like to pick up on Judge Wynn's question about statutory interpretation. The first and fundamental problem with what the district court did is it didn't interpret the statute. It said there's multiple different interpretations and I'm not gonna pick one. And under Drakeford and under Mallory, that's the first and foremost problem for reversal. The court is required to interpret the statute. And we believe that the interpretation is guided by the CMS regulations and guidance that Mr. DeSantis discussed. The statute- Actually, the problem I have is if you look there, we know that Chevron applies on the reasonable interpretations. You only get to Chevron if the statute is ambiguous. And what the defendants are claiming is that you can't spring us up for trouble damages to give us, say that we have committed fraud when under federal rules for Season 9, it's not supposed to be that easy to prove. And you can't bring us up for trouble damages and attorney's fees and this and that. And in some cases, put air resistance on the line and turn people out on the street because they lose their jobs due to the incredible SBA award. Now, I'm all in favor of an SBA award where it's fraud committed. But by the very act of going into Chevron, you're conceding that it's ambiguous. And the idea of imposing these kinds of sanctions on defendants on the basis of ambiguity is really unbelievable to me that we would do something like that. It just seems to be shorn of the elements of Dupont's test which requires something other than under Chevron, we've got something that's ambiguous. And I just, the implications of this are quite devastating when we're saying any ambiguous interpretation is a basis for an FCA claim. That goes a long way.  Three points in response, Your Honor. First and foremost, I don't believe the statute is ambiguous. I believe the latest language of lowest price available from any manufacturer that any means all when you look at one UFC one, a common dictionary definition of any and multiple four circuit opinions that talk about the fact that any means all in multiple statutory contexts. So I believe that the court should interpret the statute to be unambiguous and find that the interpretation that both the DOJ and there were later proposed as plausible as the DOJ noted. Second, if you find it to be ambiguous and look to that guidance, we're not guessing as to what that guidance is. There is guidance in the rebate agreement which has the force and effect of the statute. There is guidance in the common notice period in 2007 and there's specific notice in common in 2016 that specifically says when you give a rebate to two different entities, you combine them for actual price realized under the regulation. That confirmed the consistent policy over time without a change in rule regulation. You can still take advantage of the lowest price given to an actual entity. You can still do that. But the word any, it can mean, it actually cuts in your favor only not in the way you think. It can be any wholesaler out there or any retailer out there or any governmental entity out there as long as it's an actual entity. And that's what the word any means. And as I was saying, you can of course, even without the aggregated rule which you're arguing for, you can still take, the government is still, you're able to take advantage of the actual, the defendant wants a higher death price. You can take advantage under this statute of a lower death price, a low price, as long as it's actually available. And your honor, when the court interprets the statute, the question of whether or not an innocent party is being held into a false claim in that case goes to the subjective nature of intent, whether it's reckless disregard, deliberate ignorance, or actual knowledge. And that's a factual issue. And this court has repeatedly said, it protects defendants by rigidly holding to that standard. How do we get the subjective business in light of a FACO decision? Well, Brayford and Mallory from this court specifically talk about the need to allow juries and prior facts to determine whether or not a party has the appropriate knowledge, reckless disregard, or has been warned away, all of which are fact issues. Both of those cases talked about the advice of counsel and whether or not a good faith interpretation that was given to them by counsel was appropriate for that knowledge requirement. Aren't you going to make us an outlier here? There's something like four different circuits in the weight of FACO that have said this is not a mess. The answer is not a matter of subjective good faith. It is a question of objective reasonableness. And there are four circuits that have gone in that direction. And aren't you making an outlier of us? I am not, Your Honor, based upon the Brayford and the Mallory decisions that this court's already issued and the decisions of the 11th Circuit. But even under that FACO analysis that you're describing, all of those courts talked about the importance of guidance. And if there is authoritative guidance to a defendant, then the decision is different. I want to address the FACO decision itself before we walk down this path. It was a decision that dealt with an entirely different statute, which was the Fair Credit Reporting Act. This is the False Claims Act. The Supreme Court has made it clear that context matters. And so if we're going to try to import this common law definition of recklessness from the Federal Credit Reporting Act into the False Claims Act, that's an entirely different issue. And the court itself acknowledged, and they said it, they said construction is often dependent on the context in which it appears. The Federal Credit Reporting Act is intended to promote fair and accurate credit reporting. The False Claims Act is intended to prevent fraud. Two different things. And to take that context and walk down the road into a totally different statute is really taking FACO out of the realms which it is. You need only go to the next line when you go to hell, where the Supreme Court did speak to it and show you that Escobedo, Escobar, shows the same kind of limitation. The Supreme Court recognizes that the False Claims Act has a different purpose, and we go back to the statute. Congress has a role here. Courts have weighed in on this thing. They come up with this objective of unreasonableness business, not in the statute, and yet want to say textualism here, textualism there, but when we go right to the statute, we know exactly where it is, and if you don't like it, go to the Federal Common Law. And you go to the Federal Common Law, you don't have to go to a dictionary. Go to the Federal Common Law, and it's right there that allows for this expanded definition of what a fraud is. If we go down this way  ultimately we're gonna gut this False Claims Act of the very purpose that Congress enacted it for, and import into it what the court feels like it should be, perhaps under the Fair Credit Reporting Act. Two different contexts, and the Supreme Court has acknowledged this time and time again, listen, follow us, but do it in context, and the context of this is different, and there are different courts who have gone different ways. Maybe in a dissenting opinion, maybe other ways, but there are some very thoughtful judges who have gone the other way on this issue, and for good reason, and they are following the textualist approach here of going to the statute and saying there is nothing in this False Claims Act that talks about objective unreasonableness into it, and then they look into what fraud is, then you can go into the Common Law to determine that. Your Honor, may I briefly respond? I know my time is lost. Sure. Please. No, let me- Judgment, I completely agree, and I think the context matters, both interpreting the Best Price Statute as well as the False Claims Act, and there are a number of decisions and a number of thoughtful analyses that talk about the exact difference that you described. The False Claims Act is the federal government's primary tool to uncover fraud against the United States. It is the single most important tool to do that, and in order for it to succeed, courts and judges have to follow the statute and this interpretation- What you might do when you come up for rebuttal, you might address the cases from the third, the F8, the non-circuits, which have imported the FBA's, have imported SEPA's reasoning into the FBA's parallel preemptive requirement, and it seems to me that the statute has plenty of room to convict people or to make them the object of a civil judgment. There are plenty of cases of fraud. It don't involve sort of borderline and guesstimating as this one, but if you would wait until rebuttal, now I know you feel passionately about your case, I know Mr. O'Shaughnessy feels passionately about his case, and I totally respect both of you for that, and I think we'll have some time on rebuttal, and if it's time for Mr. Elwood to give his argument. Thank you, Your Honor. Judge, I just want to add one other little point that I think in looking at this, there are elements in terms of the falsity in Siena, Sienta, and sometimes we convolute those and conflate those issues, and I think it's important for you to parse those out to make sure what we are talking about, particularly with SACO, is it in the context of Sienta, is it in the context of whether we are dealing with the falsity of it? Thank you, Judge. Do you have anything further to ask of Mr. Callard? I do not. Thank you, Judge. Mr. Elwood. Thank you. May it please the court, John Elwood for Appellee Allegan Fails. This court can affirm the district court's judgment on any one of the four grounds outlined in our brief demonstrating that the judgment below is correct. First, because the Medicaid Rebate Statute does not require the aggregation of this concept of separate entities. Second and third, because the objective reasonableness of that position makes it impossible for the relator to plead either falsely or with Sienta. And fourth, because relator failed to plead fraud with the particularity required by Rule B. Now, I'd like to address a couple matters right out of the gate about the matter of Sienta and where exactly this comes from. Judge Wynn, the Supreme Court, the Sienta involved in the Fair Credit Reporting Act is exactly the same as in the False Claims Act. It's knowing or reckless. Knowing includes deliberate ignorance. So it's exactly the same mens rea required there as here. The Supreme Court said, you know, you can't even get to recklessness under common law. And the Supreme Court in Escobedo said, you use common law for a term as undefined as it is. Recklessness is undefined in the False Claims Act. You can't get to recklessness unless it's objectively unreasonable. And I want to read you something from the government's own brief in that case, which is, it said, well, it's on page 23. I don't know if I can find it. Let's be clear where you got that from. Is that that footnote at the very end of Safeco? No, this is from the government's brief, Your Honor, on page 23 of the government's brief in Safeco, where it said, unless the defendant was objectively reckless, you don't even- I'm more interested in what the Supreme Court said. And this issue was directly in front of the Supreme Court. You can look at the argument transcript. It's- Interested in what the Supreme Court said, not a brief that the government submitted to anybody else. I want to know what it was the Supreme Court said in Safeco. Well, the Supreme Court said it on page 70 in a footnote, but this argument was definitely in front of them. They spent a lot of time on argument discussing it. It would decide- So they put it in a footnote at the end of the opinion, and that makes it- You feel like they addressed a matter that was directly in front of them on that particular issue in a footnote at the end of their opinion. That is exactly right, because it was not a central issue to this, and it was- Okay, and I'm just saying it's interesting that you highlight that was really what it was about. It was important that- And then they put that in a footnote at the end, and then they also indicate that context matters. There's no question of that. It's in there. It says that, you know, and important is context, and I would take it your position is that the context of the Federal Credit Reporting Act is essentially the same as it is for the False Claims Act. I take it you have to say that, don't you? I would say- I would say- You have to, don't you? I'm sorry, there's a buffer here, so I can't tell when you're speaking or not. Well, the question is, given the Supreme Court said that context had to be there, you have to accept that the context of those two statutes is the same. I would say it applies a fortiori in the fraud context, because we're not talking, we're talking about trouble damages of finding that you are a fraudster, that you have defrauded the federal government. And I think that the argument that you can just do this based on, you know, whatever, I mean, the government talks a lot about post hoc rationalizations. You can have an objectively reasonable interpretation of the statute, and you can be found to have violated it later because somebody comes up with a better argument than the one that you already had. And it was important enough, Your Honor, that the government addressed it in its own brief, and it was the center of its argument, oral argument at court. It said only if the defendant's failure to comply with the law was objectively reckless would it become necessary for a court to probe the defendant's subjective good faith. So the government thought it was important enough to put it in the brief and to make it part of its oral argument. And I think that that applies a fortiori here when you're talking about a broad statute, not just about, you know, making credit reports fair, but whether or not you are a broad statute. Why would we read that footnote in the context of the Federal Credit Reporting Act instead of in a broad sense that it applies everywhere? Judge Wilkins indicates there's a whole bunch of courts out there, but really what we have is two circuits have applied that SACO definition of recklessness to the False Claims Act in passing. But you got the HALO decision that follows there and in which the Supreme Court cabins this. It makes it clear that there may be a different context here. Your Honor, I would disagree. In addition to the super value case from the Seventh Circuit, which happened just recently, we have Shimone versus Equifax, 2021 case from the Second Circuit, Long versus Kimme Hilfiger from the Third Circuit, and Levine versus World Financial Network, which before fell, the Eleventh Circuit said that basically if it's subjectively reasonable, you don't even talk about subjective intent. So there's all that. Now, HALO, I'm a little bit interested to hear both these parties making so much of HALO because neither of them thought it was important enough for them to raise in their opening briefs. The only brief the government has filed in this case doesn't even mention HALO. And there's a- When you talk about something that was important to raise, we spent a bit of time talking about statutory interpretation. I think you got to agree, District Court really never got there on that. I don't think- And we spent a lot of time talking about that. Well, I don't think, as long as you can get to objective reasonableness, you don't need to get beyond that. But if I could just talk about HALO- Well, but I want to deal with that and make sure we understand it. It didn't get to that statutory interpretation, did it? It didn't ultimately conclude one way or the other, although it said that our reading was the plain and natural reading of the statute. So we- I understand that. That's ball of plate language right there. I mean, plain and natural. I mean, but I'm talking about in terms of the basis, the basis of it turned upon is determination that there was, that the decision of the defendant here, Elegant, I guess, was not objectively unreasonable. And once it got there, that kind of ended it, didn't it? But I think that that's an appropriate thing to do. For example- I'm not saying it's inappropriate. I'm just saying, as a matter of what we are reviewing, that's what I'm trying to get to is, it stopped there. We can spend all day long talking about statutory interpretation. District Court didn't get there. So if we find there's something, a problem there, that's something for the District Court to do, not us. Right? I don't believe so. I think, to begin with, there was enough statutory interpretation the court got to the position that our position was objectively reasonable. In addition to the plain and natural reading of the statute. But in addition to that, I mean, this court can always talk about what the statutory interpretation of the statute is. And I'd be happy to get there. But as far as HALO goes, I think it's important that, again, neither party thought it was important enough to raise beforehand. And I think there's a reason for that. The court was interpreting Section 284 of the Patent Act, which the Supreme Court emphasized involved bad faith infringement. And so the court said, in the context of such deliberate wrongdoing, it is not clear why an independent showing of objective reasonableness would be a requisite to enhanced damages. It didn't walk away from SACO. It just said it matters differently in a case that involves, whether or not they involved wrongdoing, whether it already- Let me go with your definition of SACO and its effect on Sienta. And if we read it that way, focus on this recklessness, what do we do about the other two standards? What do we do about actual knowledge and deliberate indifference type? I mean, essentially, you just collapsed it into one. And I mean, in a tort sense, when you're dealing with recklessness, that's different than actual knowledge of it. I mean, that is almost like a lesser type thing you come to. And I'm confused on that aspect of it, of you got Congress that articulates three different separate means of doing it. And if you read SACO in the manner that's done here, which I contend it should not, then it allows you to read two of those three Sienta standards right out of the Fair Claims Act, of the False Claims Act. And so how do you respond to that? I'd say, for the reasons mentioned in the government's brief in SACO, on page 23, you don't even get to those other mental states unless you can say that this statute is objectively unreasonable, because, Your Honor- I certainly don't, if it is the Fair Credit Reporting Act. But we'll talk about the False Claims Act, for which you've got those different standards there. Congress doesn't need them, because if you're gonna come and deal with the recklessness, you can just throw them out. Your Honor, the mens rea in the Fair Credit Reporting Act is exactly the same. It's knowing and reckless. Knowing automatically has deliberate ignorance built into it, that's mens rea law 101. And so it's exactly the same standard. And when you're talking about a legal question, this was an argument that came up, that oral argument in the SACO case. You can't say you really know what the law is, if you have an objectively reasonable position and you don't have authoritative guidance. You may have an opinion, you may have a guess. I don't have- So, at the end of the day, you're saying Congress just created three redundant requirements here, then? Didn't need all this. Congress wasn't trying to broaden the definition of fraud here. You collapsed it down into one nice little package here. In the mine run of cases, all three would have a role. But where we're talking about, where the uncertainty is about a legal issue, yes, it does collapse it exactly with an identical mens rea in the Fair Credit Reporting Act provision. In addition to that, Your Honor- The point is, with a preemptive requirement of knowing and delivering justice on one side. But you can't be reckless if you have an objectively reasonable position as a matter of law for your position. That's not recklessness. And that's the graveling of the SACO decision. Remember when we were interpreting the SACO, recklessness cannot be derived from an objectively reasonable position. I mean, if that is so, if it can be, you just overturned E.O. on the law. And that's the basic point of SACO, and that's the whole thrust of things. It's almost a due process matter. And that is, you cannot project companies to financially ruin us. And they really are ruining us for the company's very existence on the basis of, for example, negligent behavior. And this is even negligent. And the point is here, not only is this an objectively reasonable standard, and I think when Mr. Dos Santos was talking about Chevron, he made it clear that there was ambiguity here. And when you look at the statute itself, there's not just one word that makes your interpretation. The word is three, it's the word any, it's the word available, and it's the fact that the entities involved are expressed in the singular, and the fact that the word price is expressed in the singular and you put all that together, and you get the idea that they're talking about an actual price available. And that's a difference on an average price or an aggregated price, or something that is purely hypothetical. Your position, and the district court says, my colleague went to the boilerplate, so this is the most natural reading of the statute, but it's a perfectly natural reading of the statute. It's a perfectly natural reading of the statute. Congress wants to say you gotta go that best price means aggregated discounts, that's up to Congress, but it sure as heck didn't say that, at least in unmistakable terms here, that would seem to me a way of propaganda, or imposing, and I'll repeat myself, ruin of financial awards upon company after company that is making claims based on objectively reasonable belief. I agree with you, your honor, will not be surprised by that, but I just want to point out also, in addition to, you're asking for a price that no party received, it's not available from a manufacturer, anyone, no party has ever received that. And that's- So I don't understand that. I don't understand that. First of all, as I indicated, I think that recklessness covers different conduct than actual knowledge and deliberate indifference, but if you look to these facts, CMS makes a rule, your client disagrees with it, and then you do a data audit of this thing to identify rebates, stacking, then you eliminate most of the scenarios and you put language in the contracts to make sure that happens, but it didn't do it for your favorite customers. Why is that not knowledge for violating the law? Your honor, I might- It's squarely so, it's squarely so. The idea being is, if you can't be, you can't have actual knowledge and be reckless, and in other words, you have to be, at least from what I understand your proposition, is you gotta be reckless before you can have actual knowledge. That doesn't follow. You can have actual knowledge and not actually have to be reckless. You can be deliberately indifferent and not actually have to be reckless. To collapse it in is judges rewriting statutes to fit, or perhaps what judges, what was it alluded to? Maybe trauma on companies or whatever, I don't know, but that's not our job. We follow what Congress has set forth here clearly. We got a clear example of conduct it had to know that when it made those distinctions for the favorite customers, it knew it was violating the law because it had already disagreed with CMS, took its data, did it for some, not for others. And as a result, the allegation is that the United States  are being deprived by this falseness up here that results in $680 million being deprived of government. If I could have time to give two answers. First, it's not collapsing this across the board. It's when there is an objectively reasonable legal interpretation. There's really no such thing as actual knowledge that your interpretation of the law is the wrong one or that you're being deliberately ignorant. Secondly, as we argued in our brief, if you look at page- So to follow that point, you can have actual knowledge that you are committing a fraud, but if you're reading, if you can go back and now look at the statute and manufacture a reason and says, well, that is objectively unreasonable. And therefore I can't be reckless and because I can't be reckless, I don't have Siena, so I don't have a false claim. Well, to begin with- Is that what you're saying? I'm saying that you don't inquire into subjective mens rea. But in any event, I think that you can look at, we said in 2006, what our- Let's make sure you're speaking directly to me and I understand we can use the legal terms of mens rea, subjectivity and objectivity. I'm saying dealing with the factual scenario where one has actual knowledge of a fraud. That's assumed that is the fact, which we don't have to assume it, it's right here. You got it right here from CMCS that you put out this rule, your client disagrees with it, does a data audit, does it for nearly everybody, but then picks these favorite ones to not doing it, that's knowledge. So they know it. Your position is forget that, look at the statute and see if this reason is something that you can't say is objectively unreasonable, a term that sort of we pull out of some court, maybe safe code using any position in the instance of the Fair Credit Reporting Act, all well and good. But they did say context is important. So in this context, how do you make that case here? Your Honor, it is because you can't have, and this is the point of the super value decision from the Seventh Circuit made, when the law is objectively, your interpretation is objectively reasonable, you don't have, you haven't been warned away by an authoritative interpretation, you can't say you actually know. Secondly, I wanted to say that on page 25 to 26, and again, in page 14 of their, and that's of their opposition at the district court, and at page 14, note six of their reply brief, in this court, relators I think concede the fact or they waive essentially this argument that there are other layers of mens rea. Their entire argument below was basically, was the objective reasonableness argument, which they agreed with the governing task, they agreed on page 24. And so, you know, I don't think you need to get to it as a general matter, because- But in any event, let's be clear, make sure we set out, put ourselves, center ourselves, understand what the law is. We're on 12B6, and we're dealing with plausibility, is that correct? And I think- Oh, absolutely, that's correct. I probably shouldn't ask the question, it is correct. We're here on 12B6, and it's a plausibility determination. And that factors in to what we're doing here, right? But as a legal matter, all you have to do is say, is it objectively reasonable? And I think that we do have an objective reasonableness standard. I also want to point out that the reasonableness standard is baked right into the regulations and into the rebate agreement. It says, if there's not something on point, you might just have to be a reasonable assumption. It invites reasonable assumptions and average price calculations and best price calculations. If I could get to this question about the, whether CMS actually really ruled on this, I want to point out, this is where Mr. Dos Santos began his talk. It's at page 72, Federal Register 39198. It is the point that they were making there was, they said both, this would effectively call for combining two separate prices, one offered to a PBM, Pharmacy Benefits Manager, and the other to a customer of a PBM. Then in follow of what he actually read about, what he read about how, we have a separate price for everyone. And they say, we do not agree with that comment, but he didn't read this part. Although we have deleted the requirement that manufacturers include PBM rebates and discounts and other pricing sections and best price, there are instances where some PBM rebates and discounts, they'd be designed to adjust prices at the retailer or provider level. So they didn't specifically disagree with our idea that you look to the actual price the party received. That's all we're talking about is, just like the statute says, it's a price from a wholesaler. Mr. Elwood, I wanted to read my friend Judge Wynn, has said, well, the companies can get off the hook all the time. Just look, this is objectively reasonable. Well, the company on its own motion can't get off the hook that way. The objectively reasonable theft is not to be something that stands up in court. That's objectively reasonable. This has got to be something objectively reasonable has got to be something that a court finds. And if a claimant under the FDA is pursuing on dubious grounds, it's taking a terrible chance that the court's gonna find it not to be objectively reasonable. So the objectively reasonable theft, if I were apparently advising the company, I would say, you better make darn sure that our position here holds water and that it's an objectively reasonable theft. And if we come up with something that's half-baked, we're gonna get slammed for a whole lot of advantages. So I just don't think that, you know, the idea that the objectively reasonable standard is some kind of guilt. The company can get away with all kinds of fraud. It just isn't the way it turns out. In actuality, they're still going to be very misdiverse in what they're claiming and on what basis. That's all I'm saying. May I answer your honor? Yeah.  And I think it's also telling that, you know, this isn't something we just cooked up now. This is what we said in our 2007 comment letters. It's what- But does that matter? Does that matter based upon the way you're proceeding? Let me ask, let me tell you, let me put it in terms of this. Let's assume that you knew you were violating the law at the time, and then you didn't challenge on it. Then you go look at the statute and you say, well, what you did, there's an objective, reasonable basis for doing so. Even though you intended fraud and knew you were doing it wrong from the beginning, and now after the fact, you come up with the reason as to what that would support what you did, even though you, whether you did or did not, it comes after.  It doesn't matter whether you manufactured it yourself, but the outcome is that you can do it. You can come up with a reason, and if the court finds based upon its interpretation, its own means of going beyond what Congress and what the statute says, oh, it's not objectively unreasonable what you come up with, you're off the hook. Even though in the first instance, when you started out, you knew you were violating the law. Is that the position? Your Honor, I think that I would say that you can't really know what the law is if the law is so unclear that you can have literally an objectively reasonable position that you're right. That's what the super value case- But what difference does it make? What difference does it make? If you start out with the intent that you know, even if you know what the law is, and you even, everybody's looking at this, the law says this, and you say, I'm gonna do it. You're committing fraud. I know I'm doing fraud. And then when you get called out on the carpet for it, you say, you go back, look at the statute, and say, wait a minute. If you read this statute, there's an objective, reasonable basis for me to do it. So I'm free. Your Honor, just as in the Justice Scalia's Gates and Fox case cited at page 43 of our brief, if the law is so unclear that you, that somebody can come along later and say, oh, look at this. This can be objectively interpreted to mean something completely different where your conduct is lawful. That is a real due process problem. You can't say somebody is a- Even with the due process problem, go back to CMCS, CMS, issue this rule. Your client disagreed with it. And then you did your data audit. And after you do this data audit, you then eliminate all those scenarios that would put this contract in that vein. And then you create this favorite customer. And you know, you have to know, because you disagreed with it. You knew what they said there. And at that point, you know what you're doing is not in compliance with it. Why is that not knowledge? But you're saying, okay, I knew and I did it. But guess what? I'm gonna go and ask the court to look at this statute and say, well, what I did is objectively reasonable. And therefore, I can get away with it. Your Honor, STAPO begins from a threshold of ambiguity. And if the statute is ambiguous, I don't think you can really say, oh, I knew that was what I was doing. You know, we can talk about STAPO, we've been there. My position is you have to look at it in context. I think the Supreme Court says it. We have some differences of opinion. The courts have said it. They can say it a thousand times. It's right there. There's such a thing called textualism. There's such a thing, it's called, we are going to be consistent in our cases and how we handle them. So I got the STAPO aspect of what I gave you was specific facts from this case. I'm trying to get it from there. And the facts of this case, but I wanna give it to you again. There's a rule here. And the rule is made and you disagree with it. You then do your little research, your data audit. You then cut out those scenarios and you save them for a few favorite customers. That's the problem in this case is you knew you were doing it. Your Honor, if I could read this, this is the district court and I agree with the district court's interpretation. Relator has not pointed to a single example where CMS explicitly said that manufacturers must aggregate discounts to different customers along the supply chain in a given sale. It did not, their rule did not disagree with us. There was language in the preamble which we said was ambiguous that could be interpreted that way. And we said that our interpretation was, and this wasn't just us, this was us and many or most pharmaceutical manufacturers. Our interpretation- I'm accepting everything you're saying being true, even with the district court. But the first instance of it is to know is the actual knowledge that you are doing something that is inviolative of the law. To know that, but then that the statute could have, but let's assume it could have this reading is what you did was not objectively unreasonable. And so it just invites opportunities for entities who are in violation of the False Claims Act by actual knowledge to then go and find, search this statute, get you some good lawyers and find a good court. So you find something that says it's objectively, not objectively unreasonable. Your honor- And therefore we can throw out all of it what Congress wanted to do when it wanted to broaden this whole statute to say, we are not gonna let you commit fraud against the American people by enacting this Fraudulent Claims Act. Your honor, it's due process 101 that if the statute is- It may be due process 101, but the statute- I'd love to hear the process. Can I hear, can I just hear the answer? I wanna come back to your point, but can I hear an answer? I totally wanna hear his answer. It's due process 101 that if the statute is ambiguous and it's not clear what it prohibits, you can't hold us guilty of violating it. You can't say, hold us subject to trouble damages for that. That is due process 101. Gates and Fox. And in addition to that- Well, I wanna make sure Judge Richardson asked for a response. Did you get something out of that, Judge Richardson? I'm trying to, cause I didn't. I'm not understanding the due process 101. I just wanted to hear his answer. That's all, I got his answer. It was probably the use of the due process I'd like to report to some case law on it that really goes to it. And I understand your argument. I understand it's basic law and I can deal with that. But that's where I was going with it. I wanted you to answer the specific example I gave you with the facts here. We can talk due process 01. We can talk about civil proceeding. We can talk about safe code, everything. But here's the example. Actual knowledge based upon the conduct here. May I answer? Yes, please. The point is, we said, and everybody else in the industry said, we interpret this regulation to mean you only collect together discounts to particular entities. We said that the government, if they were gonna disagree with us, that was the time to do that. The government talks a lot about post hoc interpretations. It didn't clearly say, you have to collect together every discount you give to every actor. They could have said that, that would have been the perfect thing for them to say if they meant that in 2007. Instead, fast forward 15 years to now. Did they say that in the district court? No. They say that for the first time in a court of appeals pleading here, that's the first time they say unambiguously, you've got to collect together all of these things. So, I mean, if there's a problem with post hoc rationalization, it's on the other side of the beam. And I'd say that, again, Gates and Fox says that if you can't hold somebody culpable for unexpressed intentions, you got to put it out there in black and white. And- All right, thank you. We'll give you a good bit of an extra time because of that question. I want to thank you very much. Thank you, your honor. Here you are, Jim Otton. Is Mr. Cato or Mr. Dos Santos up next? Some of you had some other time. Who's up next? Yes, your honor, I'm Mr. Dos Santos. Your honor, I do want to emphasize the allegations here and the fact that we're at the pleading stage. May I ask you maybe the same question to make sure that I understand the government's position. Is actual knowledge of an agency position hypothetical? Whether there's an actual knowledge of agency position. Is that the same thing in your mind is actual knowledge of the law? So the agency's position becomes the law in your perspective, or is there a distinction between those two? Yes, your honor. In this context, the defendant was required to follow the binding regulation. Rebate agreement requires it to follow CMS's regulations and interpretations of the statute. The allegation here, and I want to make this clear, is that- No, no, but I understand, but just make sure I'm answering the question, right? The question, I'm talking about the answer, right? Knowledge of the law, right, is one question. Knowledge of the agency's position is a separate question, right? And I'm trying to understand, in your position, is your view that they are the same? That if you have knowledge of the agency's position on what the law means, that that is the same thing as having actual knowledge of the law? So as to actual knowledge, if you know the agency's position and you're submitting a report to the agency about what your best price is, and you know the agency's going to interpret it a certain way, it's going to believe that what you meant by that was that you were aggregating all discounts. You know you are submitting misleading information. You know you are submitting a false- And is that true even if it turns out that the agency is wrong? If it turns out that the agency is wrong, then you don't have false evidence. But as the agent in the lien said, if you know that the government is interpreting it a certain way, it is misleading for you to submit information while recklessly disregarding it. And that comes straight from the common law of fraudulent misrepresentation. I just want to emphasize here at a very high level, the allegations here are that the defendant submitted the letter in 2006 saying, hey, your proposed rule seems to be requiring us to do this. Then CMS issued the 2007 rule, did not say what the defendant wanted. Instead said, here's an interpretation that was offered in the comments. We don't agree with that. Provided two examples of where discounts need to be aggregated. And then the complaint says there were board meetings about why, about the fact that the company might be violating best price. And then- Is there any kind of comment? There's a letter from the IRS or any kind of comment? That doesn't have a formal status of law or CMS comment. Your Honor, here we're dealing with a notice and comment regulation. Now as to what can place a defendant on notice as to the high likelihood of a violation, which is what the court said is required in Drakeford and in Mallory. It said, all that you need to show is that the defendant was deliberately ignorant that it was treading on illegal ice. That can take many shapes in Drakeford and in Mallory. It was attorneys who warned them and said, these contracts don't seem to be complying with the Starks law or with the anti-extinction- No, it's very interesting. You know, we have this rule of manatee with respect to the vagueness of statutes and people saying, well, this statute is vague and therefore it's a violation of due process. And all of a sudden, vagueness kind of goes out the window when we're talking about this. What I'm wondering is, it seems to me that there is a great deal of difference between factual fraud, where you're claiming something that is not true as a matter of fact and something that is a disputed legal claim that can be disputed, brought in for an item and argued among lawyers. And the question is, if the agency takes a certain position, then it may be in court if that position holds up as objectively reasonable, or it may be in court that it does not. It seems to me that the agency's position adds to the calculus of risk that a company would be taking and doing against it, but it would not, on that account, necessarily make the company's view objectively unreasonable. Your Honor, in this context, the rebate agreement is clear that manufacturers need to play by CMS's rules. The defendant is agreeing to abide by CMS's rules. Isn't that different from a formal regulation? No, the rebate agreement applies just like a statute of regulations. The Supreme Court made that clear in the As for Care case. But fundamentally, Your Honor, the allegation here is that the defendant told CMS, we don't agree with what you're saying in the proposed rule. CMS gave it an answer that it didn't like, and then just ignored it. It could have challenged it in court. It could have gone back to CMS, CMS has a policy inbox, and it could have said, CMS, please address this, we think that you're wrong. Those are questions that can be addressed at the later stage of the case. Defendant might have evidence later on showing that it was acting in good faith. We relied on our counsel. We did discuss with industry experts, and we concluded that we were in the right. But the allegation here is CMS said something that the defendant didn't want to hear, and then the defendant just ignored it. There can be no challenge, no matter how unreasonable, to the position taken by the administrative state. If that is the ultimate opinion, the form we all, the full pitch we all must bear. You can certainly challenge the court. I think what's happening is that the administrative interpretation may be brought up in a court of law as saying this makes this position objectively unreasonable, fine. But the idea that this is the final and definitive ruling is troubling, particularly if it's actually being very difficult. Ultimately, the final argument. Let me be clear. The defendant could have challenged CMS's role in court, but under this court cases in Drakeford and Mallory, as to the knowledge component of deliberate ignorance, which is not objective reasonableness. That is a separate statutory element. That's the whole crux of this line of questioning. I mean, we're not dealing with the SINEDA here. We're dealing with the actual, the agency's interpretation of the statute is the law. If you want to challenge that, you can challenge it, but to challenge it by just disobeying it and doing something different would have chaos throughout the industry. You'd say every time an agency makes a law, if you can find yourself a reasonable interpretation of the statute other than what the agency got here, you go do that and just ignore this rule that has been made in accordance with Congress. That's what Drakeford has set forth here. And so when CMS makes this rule, what makes this particularly egregious is not a situation where they just read it and said, well, we're gonna do something different. They actually went back and disagreed with CMS. So they knew the position that the agency took, and yet they engaged in conduct with these favorite customers that was directly in contravention with the rule. If that's the law, we are setting up a situation where an agency rule, once you make it, you can go there and argue and disagree and put up everything you want, and come out and say, I'm gonna do something different because now I read the statute differently. That's not the way you challenge it. You can challenge the agency's regulation, but you don't do so with actual knowledge of a fraud for what the agency has set forth. May I respond briefly, Mark? If you ask for five minutes and then you go on and on, we've had six and a half minutes in addition to the time that you asked for. We have to have these come up with litigants for one or two minutes, and then they expand it. Go ahead and respond. So very briefly, Your Honor, I agree. I think that Drakeford sets out the test as being if you're deliberately ignorant that you're treading in thin legal ice, that that's enough. And the contrary position would really be sweeping because in all of these cases involving a context like these defendants say, it wasn't clear. Thank you, Your Honor. Thank you. Mr. Keller, you have some rebuttal time. I do, Your Honor. And I'm gonna try to answer your question. I appreciate what Judge Wynn has said about Safeco and the analysis, and I can't say it any more articulately, but I do wanna talk about your question to me on Safeco and this objectively reasonable approach, Your Honor, because my question back would be, what did this company do in 2007 when CMS published that preamble? And said the stat, and Mr. Elwood is saying, oh, well, we just went about our business. Right, and it takes a greater chance in court if it acts on that basis. Right. But, you know, the agency, it's instructive, but in many cases, the statute itself is ambiguous and in many other cases, it's the- Well, the follow-up and agency interpretation, that's something they're gonna have to answer to the court about. This particular case, the statutory language is so clear. So, Your Honor, even if we assume that the language was statutorily ambiguous, we know in 2007 that CMS told Allergan its interpretation. Did Allergan's counsel tell it, you have a problem here? Did Allergan's counsel said, ignore CMS because we're right? Did the board decide, as Judge Richardson said, well, we'll look at the statute and not the rules? Those are factual issues. We're assuming that Mr. Elwood is right because he said it in a brief. We don't know what happened in 2007 or 2005 or 2016 because we were denied this opportunity to get the motion to dismiss state to even talk about those issues. The district court said, we have a plausible explanation or warned away. The district court specifically said, you could read our guidance to say that the company was warned away and then ignored that plausible explanation at a motion to dismiss stage. These are factual issues of what the company did or didn't do, of what it understood. That has to be decided as a factual state, not at a motion to dismiss stage. Thank you, sir. Thank you. Are there any further questions? I have none. We will, I want to thank counsel for their presentations and we will head into the final case of the morning. Thanks to all three of you. We appreciate it very, very much. Thank you, Your Honor.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Julius N. Richardson